**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DIANE BRUNSON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11 C 02011 |
| | ) | |
| CITY OF CHICAGO *et al.*, | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Diane Brunson, filed this civil rights lawsuit against two City of Chicago police officers, William Molina and Ramon Ferrer, and the City of Chicago (the "City"). She alleges that Officer Ferrer[1] used excessive force against her and Officer Molina failed to intervene during her arrest on June 1, 2010; she also asserts claims of assault and battery under Illinois state law. Brunson alleges, in relevant part, that the officers held her body against the wall, wrenched her arms as high as they could go behind her back, and roughly applied handcuffs to each wrist as tightly as possible. Before the Court is the defendants' motion for partial summary judgment arguing that even if the Brunson's version of the facts is accepted, as matter of law the officers are protected by qualified immunity and governmental tort immunity to the extent the claims are premised on the too-tight application of handcuffs without other extenuating circumstances. For the reasons set forth below, the defendants' motion is granted.

---

[1] Plaintiff could not recall which officer handcuffed her, but the officers testify, and plaintiff does not contradict, that Officer Ferrer applied the handcuffs; it follows the Officer Molina is the one who allegedly failed to prevent the excessively tight handcuffing.

1

I.      Facts

On summary judgment, the record evidence is viewed in the light most favorable to the non-moving party–in this instance, the plaintiff. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court takes the relevant facts from the parties' Local Rule 56.1 statements and responses, to the extent they are properly supported with citations to admissible evidence.

On June 1, 2010, Maybelline Porter reported Brunson to the police for battery and signed a complaint stating that on May 28, 2010, Brunson "knowingly and intentionally made physical contact with Maybelline Porter in that she grabbed Porter by the hair and struck her in the face causing redness and minor swelling." Officers Ferrer and Molina (the "officers") located Brunson at a community center, and a security guard at the reception area summoned her from a conference room. Officer Ferrer verified Brunson's identity and explained that the officers were there to arrest her based upon Porter's complaint of battery.

Brunson went back into the conference room and attempted to close the door. The officers, who had been advised by the battery complainant that Brunson was aggressive and violent, followed her, forcefully pushed the door in, and grabbed Brunson's wrist.[2] Because they perceived Brunson to be trying to evade them,[3] the officers placed Brunson against the wall and Officer Ferrer handcuffed her using an emergency handcuffing technique which is "when [an officer] immediately tr[ies his or her] best to place handcuffs on the [arrestee] so they will not resist arrest." The handcuffs were closed as tightly as possible around Brunson's wrists. At the

---

[2] This is a contested fact; the officers claim that they did not push the door in, but rather that Officer Ferrer defeated Brunson's effort to slam the door with his foot and then opened the door. However, the officers are taking Brunson's version of the facts for purposes of this motion.

[3] Brunson testified that she was retrieving her purse, not evading the officers; the officers say that Brunson turned her back on them, darted into the conference room, and tried to slam the door. Brunson's reason for going into the conference room and shutting the door is a factual dispute that is not material for purposes of this limited motion.

time of the arrest, Brunson did not possess any type of weapon and did not strike, bite, kick, or punch the officers, or attempt to do so. Nor did she verbally threaten them with physical harm.

Once in the officers' custody, Brunson complained that the handcuffs were "too tight," and asked the officers to loosen them.[4] They did not. The officers took Brunson from the community center to the 10th District Police Station, which was about five minutes away by car. While she was riding in the back of the officers' squad car, Brunson complained again that the handcuffs were too tight and asked the officer to loosen them because they were "hurting [her] arms, … [and her] wrists." Officer Molina responded that he would check on the handcuffs when they arrived at the station.

Brunson had previously fractured her right wrist, as reflected on a November 22, 2009 X-Ray. She did not inform the officers of this at the time of her arrest, and she was not wearing any bandages, a sling, or a cast. Brunson never told the officers that she had any prior condition that handcuffing would aggravate and she never asked the officers not to handcuff her.

Upon arrival at the 10th District Police Station, Brunson was taken directly into a processing area where Officer Molina removed the handcuffs from one of her hands and the other hand was cuffed to the wall while she sat in a chair and answered questions. Minutes later, a (non-defendant) female officer took Brunson to the restroom and, upon bringing her back to the processing area, handcuffed Brunson's left arm to the wall more loosely than before. Brunson testified that after she returned from the restroom, she was not handcuffed too tightly. Brunson later complained of dizziness and light-headedness, and an ambulance was summoned. At Mount

---

[4] This is a contested fact; the officers deny that Brunson complained about the handcuffs at the time of her arrest. Again, the defendants concede the point for the sake of their motion.

Sinai Hospital, Brunson received treatment for a right wrist fracture which, she alleges, was caused by the overly tight handcuffs.[5]

## II. Discussion

On March, 23, 2011, Brunson filed her complaint alleging excessive force and failure to intervene under 42 U.S.C § 1983 and assault and battery under Illinois law. The defendants now move for partial summary judgment solely with respect to the issue of handcuffing. They argue that the officers are entitled to qualified immunity on the constitutional claims and that they enjoy tort immunity under state law because they did not act in a willful and wanton manner, *see* 745 ILCS § 10/2-202.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a) & (c). A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). Factual disputes that are irrelevant to the outcome of the suit "will not be counted." *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003) (quotation marks and citations omitted). In determining whether there is a genuine issue of fact, the Court "must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in [her] favor." *Gillis v. Litscher*, 468 F.3d 488, 492 (7th Cir. 2006). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250.

---

[5] A doctor testified that it is very possible that the June 1, 2010 X-Ray reflects not a new fracture but rather a fracture that Brunson suffered previously.

### A. Qualified Immunity

Under the judicially created doctrine of qualified immunity, public officials performing discretionary functions are shielded from liability for civil damages unless their conduct violates a clearly established statutory or constitutional right. *Elder v. Holloway,* 510 U.S. 510, 512 (1994); *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The doctrine was created to protect public officials "from undue interference with their duties and from potentially disabling threats of liability." *Harlow,* 457 U.S. at 806. To determine whether a defendant is entitled to qualified immunity, a court must examine: (1) whether the defendant violated the plaintiff's constitutional rights and (2) whether the right at issue was clearly established at the time of the violation. *Brooks v. City of Aurora,* 653 F.3d 478, 483 (7th Cir. 2011). These elements can be examined in any order. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 242 (2009)).

The defendants argue that they are entitled to qualified immunity because even if the plaintiff's version of the facts is accepted, their tight application of handcuffs was not an unreasonable application of force. Furthermore, the defendants argue that even if it was, they did not violate any right that was clearly established at the time of Brunson's arrest because in light of *Stainback v. Dixon*, 569 F.3d 767 (7th Cir. 2009), which decided before Brunson's arrest, it would not have been apparent to reasonable officers that they were required by the Constitution to loosen handcuffs in response to an arrestee's generalized complaint that they had applied the handcuffs too tightly.

The Seventh Circuit has "on occasion recognized valid excessive force claims based on overly tight handcuffs." *Tibbs v. City of Chi.*, 469 F.3d 661, 666 (7th Cir. 2006). In *Payne v. Pauley,* 337 F.3d 767 (7th Cir. 2003), the court held that summary judgment was inappropriate when there was evidence that the arresting officers tightly handcuffed the plaintiff and refused to

loosen the cuffs after she told them that the handcuffs were making her hands numb and where she ultimately required two surgeries. *Id.* at 774–75, 781. *See also Herzog v. Vill. of Winnetka*, 309 F.3d 1041, 1042–43 (7th Cir. 2002) (refusing to loosen plaintiff's chafing handcuffs for over an hour constitutes excessive force in a case where plaintiff had violated no law, was arrested without probable cause, and did not resist); *Lester v. City of Chi.*, 830 F.2d 706, 714 (7th Cir. 1987) (a properly instructed jury could have found excessive force based upon plaintiff's testimony that she did not resist arrest and the officers threatened to punch her, knee her in the back, drag her down a hallway, and handcuff her to a radiator so tightly that her wrists were bruised).

Conversely, in *Tibbs*, the Seventh Circuit held that the plaintiff could not survive summary judgment where he "complained to [the officer] once about his handcuffs without elaborating on any injury, numbness, or degree of pain; [he] was handcuffed for about twenty-five to thirty minutes (from the time of his arrest to his arrival at the lockup facility); he experienced redness on his wrists for less than two days; and he neither sought nor received medical care for any alleged wrist injury." 469 F.3d at 666; *see Sow v. Fortville Police Dep't*, 636 F.3d 293, 298 (7th Cir. 2011) (no genuine issue of material fact regarding plaintiff's too-tight handcuffing claim when the police officer refused to loosen the handcuffs after the plaintiff complained only once that the cuffs were too tight, presented no evidence that he provided any elaboration, did not complain of any injury when he was taken to the jail, and did not receive any treatment).

And in *Stainback v. Dixon*, on which the defendants primarily rely, summary judgment for the defendants was appropriate where the record showed that the officers grabbed the plaintiff's arms, quickly pulled the plaintiff's arms back, and handcuffed him. 569 F.3d at 769.

The plaintiff had asked the officers not to handcuff him because he thought it would hurt, but he did not inform the officers of his preexisting injuries. *Id*. Then the plaintiff asked the officers to remove the handcuffs because they were hurting his shoulders; he asked when he was seated in the police vehicle and again during the two-three minute drive back to the plaintiff's home, but the officer did not remove them. *Id.* The plaintiff was in handcuffs for fifteen to twenty minutes and as "a result of the Officers' conduct, he suffered two torn rotator cuffs, which required surgery and medical treatment." *Id. at* 769.

Whether or not it violates an arrestee's constitutional rights to apply handcuffs as tightly as possible and not loosen them upon the arrestee's request, the Court concludes in view of *Stainback* that a reasonable officer in Ferrer's position would not have believed those actions to violate a clearly established constitutional right. **"**In determining whether the right alleged to have been violated was clearly established, the constitutional right must be identified in a particularized sense with respect to the circumstances of the alleged violation. In other words, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Casteel v. Pieschek,* 3 F.3d 1050, 1053 (7th Cir. 1993) (citations omitted) (internal quotations and punctuation omitted).

Taking the facts in the light most favorable to Brunson, Ferrer applied handcuffs to her as tightly as possible and neither officer loosened them when Brunson complained twice about the tightness. It was only several minutes later, after Brunson was transported to the police station, that the handcuffs were adjusted.

These facts do not add up to a violation of a right that was "clearly established." Brunson does not have any evidence that Officer Ferrer used the handcuffs in a manner that would clearly injure or harm a typical arrestee; all she says is that the handcuffs were placed on her as tightly

7

as possible. She points to no authority suggesting that handcuffs should be applied any differently. Moreover, it was not objectively clear to the officers that Brunson was susceptible to an injury, *see Stainback* 569 F.3d at 773, nor did Brunson inform the officers that she had a preexisting injury that would be aggravated if she was handcuffed, *see Frazell v. Flanigan,* 102 F.3d 877, 885 (7th Cir. 1996). If the officers had known of Brunson's previous wrist injury, or that it would have been aggravated by handcuffing her, "the officers certainly would have been obligated to consider that information, together with the other relevant circumstances, in determining whether it was appropriate to handcuff [Brunson]." *Stainback,* 569 F.3d at 773. But a "reasonable officer cannot be expected to accommodate an injury that is not apparent or that otherwise has not been made known to him." *Id*. Furthermore, plaintiff does not point to evidence that the officers used the handcuffs to cause unnecessary pain or injury or that it should have been apparent to the officers that the handcuffs would cause such pain. Her two generalized complaints that the handcuffs were too tight do not, under *Stainback,* suffice in that regard.

Brunson relies on *Payne* in arguing that the Defendants are not entitled to qualified immunity because her right not to be handcuffed too tightly was clearly established at the time of the arrest. *See* 337 F.3d at 780. The Court finds *Payne*—which precedes *Stainback*—and the cases it cites distinguishable on the facts. The plaintiff in *Payne* "posed no danger to Officer Pauley or to the public," "did not resist arrest," *and* "was alleged to have committed a very minor, non-violent crime," *id*. at 780, and yet the arresting officer "ran at her knocking into her body with his stomach and chest," "unsnapped his holster and held his arms over his head as if to strike her," "fought with the other officers over Payne's arm for thirty minutes," and "eventually forc[ed] her arms behind her back, twisting her arm, and over-tightening the handcuffs." *Id.* at 779. For purposes of this motion the Court assumes that Brunson, too, was not resisting when the

8

handcuffs were applied, but she was being arrested for a violent crime (battery). Moreover, Brunson, unlike the plaintiff in *Payne*, did not tell the officers of any specific harm she suffered. *See id*. 774-775 (plaintiff complained handcuffs were too tight, she could not feel her hands, and she was in pain, and that her left wrist and fingers were hurting and going numb). Police officers are not required to respond to generalized complaints that the handcuffs are painful. *See Stainback*, 569 F.3d at 773 (explaining that "generalized complaints, without any elaboration regarding a preexisting injury or other infirmity, would not have placed a reasonable officer on notice that Mr. Stainback would be injured by these actions"). Were it otherwise, officers would be at risk of a civil rights lawsuit every time they did not immediately react to an arrestee's complaint of discomfort.

In cases where claims relating to the tightness of handcuffs have been upheld, summary judgment has been denied where the plaintiff had a particular vulnerability or where other actions of the officers, in combination with handcuffing, resulted in excessive force claims. *See, e.g,. Payne*, 337 F.3d at 780 (handcuffing part of 30-minute scuffle). Despite the fact that the plaintiffs in *Herzog* and *Lester* experienced tight handcuffing similar to that of the plaintiff in *Tibbs*, "the decisions in those cases were hardly based on overly tight handcuffs alone." *Ortiz v. City of Chicago*, 09-CV-2636, 2010 WL 3833962 (N.D. Ill. Sept 22, 2010). Here, plaintiff's alleged handcuffing injury is distinct from the other harms that she allegedly suffered during her arrest that are not before the Court on this motion. Brunson's sole complaints about the handcuffs are that they were applied too tightly and not loosened quickly enough; without aggravating factors, there was no clearly established right to be free from this conduct.

The conclusion does not change because Brunson was treated the hospital for a right wrist fracture. For one thing, she was taken to the hospital based upon her complaints of

dizziness, not wrist pain. And even assuming that the handcuffing broke Brunson's wrist or aggravated her prior unhealed fracture, "the mere fact that an injury occurred while an individual was in police custody is not sufficient to avoid summary judgment—a plaintiff must identify the specific unreasonable conduct that caused his or her injuries." *Abdullahi*, 423 F.3d at 770-71. Brunson's right is not to be free from injury but to be free from the application of unreasonable force. Applying the handcuffs tightly and not adjusting them immediately in response to a generalized complaint was not clearly established as unreasonable conduct at the time of Brunson's arrest. Officers Ferrer and Molina (to the extent that he did not intervene to loosen the handcuffs) are therefore entitled to qualified immunity on the claim of excessive force. [6]

### B. Tort Immunity

Plaintiff also claims that the handcuffing amounted to assault and battery. Under Illinois law, assault is "conduct which places another in reasonable apprehension of receiving a battery." 720 ILCS 5/12–1. A battery occurs when one "intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12–3(a).

Illinois law protects government employees from tort liability that sounds in mere negligence. In particular, with respect to police officers "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS § 10/2-202. Conduct is willful and wanton

---

[6] If there is no application excessive force, then by definition, there is no unconstitutional failure to intervene. *See Abdullahi v. City of Madison*, 423 F.3d 763, 767-68 (7th Cir. 2005). *See also Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). It follows that if qualified immunity applies with respect to the excessive force claim, it applies to the alleged failure to intervene as well. If Brunson did not have a clearly established right to be free from tight handcuffing under the facts of this case, as the Court has concluded, then Officer Molina could not have violated a clearly established right in failing to intervene.

10

when it "shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1–210. Although it is a fact question whether conduct is willful and wanton, the issue may be resolved on summary judgment if the facts are insufficient as a matter of law to support a claim. *See Smith v. City of Chi.*, 242 F.3d 737, 744 (7th Cir. 2001) (holding that pulling suspect from car, slamming him against it, and aggressively handcuffing him was not willful and wanton conduct). *See also, e.g.*, *Guidry v. Boyd*, 06 C 1600, 2007 WL 2317174 (N.D. Ill. July 17, 2007) ("a triable assault and battery claim might be adduced relating to a handcuffing, in this case [however], there is no basis by which a jury could find willful and wanton misconduct by the [] officers.").

Conduct that is "willful and wanton" under § 2-202 is narrower that the conduct that would be considered "unreasonable" under the Fourth Amendment; therefore, reasonable conduct is highly unlikely to be "willful and wanton." *See Carter v. Chicago Police Officers,* 165 F.3d 1071, 1081 (7th Cir. 1998) ( "[A]lthough a litigant could soundly argue that willful and wanton conduct should be considered unreasonable, the inverse is not necessarily true. It is entirely possible that unreasonable conduct may not rise to the level of willful and wanton conduct."). *See also DeLuna v. City of Rockford,* 447 F.3d 1008, 1013 (7th Cir. 2006) (noting obvious "difficulties" with the argument that conduct that is "reasonable" for Fourth Amendment purposes can be willful and wanton under state law, because even conduct that is *unreasonable* under the Fourth Amendment can still fall short of "willful and wanton."). This Court has not held that the officers acted reasonably as a matter of law, just that the right they ostensibly violated was not clearly established. But Brunson does not point to any evidence that officers acted anything but negligently in the application of handcuffs. Nor do the facts of the case, with

respect to the handcuffing alone, permit a reasonable inference that the defendants intended to harm Brunson or recklessly disregarded a substantial risk of harm. As noted earlier, they did not ignore specific complaints or disregard a known injury or vulnerability of the plaintiff's. Without more, the tight application of handcuffs, and the failure to loosen them in response to a generalized complaint, does not rise to the level of "willful and wanton" so as to pierce the defendants' tort immunity.

* * *

The motion for partial summary judgment is granted. To the extent that they are premised on a claim that she was handcuffed too tightly by the defendants, Brunson's claims of excessive force, failure to intervene, assault, and battery are dismissed with prejudice. To the extent that these claims relate to the officers' actions other than handcuffing, however, they may proceed.

Entered: March 7, 2013

John J. Tharp, Jr.
United States District Judge